1

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| NIKO PAPOUTSAKIS, | : |
| Plaintiff, | : Civil Action No. 10-2147 (SDW) (MCA) |
| v. | : **OPINION** |
| BANK OF AMERICA, | : January 20, 2011 |
| Defendant. | : |

**WIGENTON**, District Judge

Before the Court is Defendant Bank of America's ("BOA" or "Defendant") Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). This Court has jurisdiction under 28 U.S.C. § 1331. Venue is proper pursuant to 28 U.S.C. § 1441(a). The Motion is decided without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons stated below, this Court grants Defendant's Motion to Dismiss.

### FACTUAL AND PROCEDURAL BACKGROUND

Defendant BOA served as the mortgagor of Niko Papoutsakis's ("Plaintiff" or "Papoutsakis") $188,000 home mortgage. (Compl. ¶ 1; Pl.'s Ex. D.) In March 2009, Plaintiff alleges that he entered into a Loan Modification Agreement (the "Modification") with BOA[1] to alter the terms of his mortgage payments. (Compl. ¶ 2; Pl.'s Ex. 2 at 1; see Pl.'s Ex. A.) BOA approved the

---

[1] While Countrywide Home Loans Servicing, LLP, ("Countrywide") is named as the mortgagee on the Modification, Countrywide became a wholly owned subsidiary of BOA on July 1, 2008. As a result, references to BOA include references to Countrywide. (Compl. ¶ 3.) Additionally, this opinion will also make references to BAC or BAC Home Loans Servicing, LP, a wholly owned subsidiary of BOA.

Modification on March 7, 2009.  (Compl. ¶ 6; Pl.'s Ex. B at 1.)  Subsequently, on May 3, 2009, Plaintiff made his first payment of $1,018.26. (Id.)  He continuously made mortgage payments through October 2009. (Compl. ¶ 7; Pl.'s Ex. B, Pl.'s Ex. 2 at 1-2.)  However, in November 2009, BOA returned Plaintiff's payments to him and sent him a Notice of Intention to Foreclose (the "Notice").  (Compl. ¶ 8; Pl.'s Ex. C at 1-2; Pl.'s Ex. D at 1; Pl.'s Ex. 2 at 2.)

In response to the Notice, Plaintiff's attorney faxed a letter to BOA on December 3, 2009. (Compl. ¶ 11.)  His letter stated that BOA's Vice President in Highland Park, Dennis Wilckens ("Wilckens"), and other BOA employees had advised Plaintiff that he could continue using the "premodification coupons but [he had to] pay the modified monthly amount."  (Compl. ¶¶ 12-13.) Further, Plaintiff's attorney faxed BOA a copy of the March 7, 2009 Modification approval letter it had sent Papoutsakis.  (Compl. ¶ 16; Pl.'s Ex. F.)

Meanwhile, Plaintiff continued to send his modified payments of $1,018.26 and BOA continued to cash his checks through January 2010. (Compl. ¶ 18.) In February 2010, Plaintiff made a double payment, which was returned to him "uncashed and with canceled endorsements." (Id; Pl.'s Ex. G.)  He then received a notice dated, January 29, 2010, advising him that his home loan was delinquent and had been "referred to BAC Home Loans Servicing, LP's Foreclosure Management Committee for review."  (Compl. ¶ 19; Pl.'s Ex. H.)  The letter listed "Loan Modification" as a remedy to prevent foreclosure.  (Pl.'s Ex. H.)  Plaintiff's attorney then faxed BOA a letter, dated February 12, 2010, stating that the bank had yet to respond to his previous letter.  (Compl. ¶¶ 20-22; Pl.'s Ex. I.) BOA failed to respond to this letter. (Compl. ¶ 23.)  Instead, Plaintiff received two form letters from BOA: the first advised Plaintiff that he was eligible for the "Home Affordable Modification Program;" and the second advised Plaintiff that BOA was in the process of addressing Plaintiff's questions and concerns.  (Id. at ¶¶ 24-26; Pl.'s Ex. J.)

On March 25, 2010, Papoutsakis filed a complaint in the Superior Court of New Jersey, Middlesex County, alleging that Defendant violated the New Jersey Consumer Fraud Act, N.J. Stat. Ann. § 56:8-1 to 20, ("CFA").   (Compl. ¶ 28.)   Plaintiff sought: specific performance of the Modification, acceptance of all payments made pursuant to the Modification or by way of Plaintiff's Attorney Trustee Account, removal of all penalty charges and late payment notations, prohibition of Defendant's pursuit of foreclosure proceedings or current foreclosure proceeding "including any threats or notations on Plaintiff's credit history pertaining to same," triple damages, and award of attorney's fees, costs and other relief "as the [c]ourt may deem equitable, just and necessary."   (Id.) On March 29, 2010, the Superior Court ordered Defendant to show cause as to why "Plaintiff should not be granted the relief sought in the Verified Complaint and why an Order should not be entered in favor of Plaintiff ordering and preliminarily enjoining Defendant . . . ."   (Pl.'s Ex. 3 at 1-2.)   On April 28, 2010, BOA removed Plaintiff's action to the United States District Court for the District of New Jersey and filed the subject Motion to Dismiss.

## MOTION TO DISMISS STANDARD

The adequacy of pleadings is governed by Fed. R. Civ. P. 8(a)(2), which requires that a complaint allege "a short and plain statement of the claim showing that the pleader is entitled to relief."   This Rule "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.   Factual allegations must be enough to raise a right to relief above the speculative level."   Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citations omitted); see also Phillips v. County of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008) (stating that Rule 8 "requires a 'showing' rather than a blanket assertion of an entitlement to relief.").

In considering a 12(b)(6) motion, the Court is required to accept "well-pleaded allegations in the complaint as true and draw all reasonable inferences in favor of the non-moving party."   Fed.

R. Civ. P. 12(b)(6).  However, "the tenet that a court must accept as true all of the allegations

contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements

of a cause of action, supported by mere conclusory statements, do not suffice."  Ashcroft v. Iqbal,

129 S. Ct. 1937, 1949-1950 (2009) (quoting Twombly 550 U.S. at 555) (internal quotations omitted).

As the Supreme Court has explained:

> To survive a motion to dismiss, a complaint must contain sufficient
> factual matter, accepted as true, to "state a claim to relief that is
> plausible on its face."  A claim has facial plausibility when the
> plaintiff pleads factual content that allows the court to draw the
> reasonable inference that the defendant is liable for the misconduct
> alleged.  The plausibility standard is not akin to a "probability
> requirement," but it asks for more than a sheer possibility that a
> defendant has acted unlawfully.  Where a complaint pleads facts that
> are "merely consistent with" a defendant's liability, it "stops short of
> the line between possibility and plausibility of 'entitlement to relief.'"

Id. at 1949 (quoting Twombly, 550 U.S. at 556–57) (internal citations omitted).  Determining

whether the allegations in a complaint are "plausible" is "a context-specific task that requires the

reviewing court to draw on its judicial experience and common sense."  Id. at 1950.  If the "well-

pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the

complaint should be dismissed for failing to "show[] that the pleader is entitled to relief" as required

by Rule 8(a)(2).  Id.

### DISCUSSION

The CFA was enacted to protect consumers against acts of deception and fraud, including

those committed in good faith.  Ji v. Palmer, 333 N.J. Super. 451, 461 (App. Div. 2007); see also

N.J. Stat. Ann. § 56:8-2 (West 2001).  Claims under the CFA require a plaintiff to allege the

following three elements: "(1) unlawful conduct by the defendants; (2) an ascertainable loss on the

part of the plaintiff; and (3) a causal relationship between the defendants' unlawful conduct and the

plaintiff's ascertainable loss." N.J. Citizen Action v. Schering-Plough Corp., 367 N.J. Super. 8, 12-

13 (App. Div.), certif. denied, 178 N.J. 249 (2003). The "unlawful conduct" may be "an affirmative

act, a knowing omission, or a regulatory violation." Alin v. Am. Honda Motor Co., 2010 U.S. Dist.

LEXIS 32584, at *18 (D.N.J. Mar. 31, 2010); see also Palmer, 333 N.J. Super. at 461 (New Jersey

law requires that consumer fraud claims consist of either an affirmative act or an act of omission.).

"When the alleged consumer-fraud violation consists of an affirmative act, intent is not an essential

element and the plaintiff need not prove that the defendant intended to commit an unlawful act."

Cox v. Sears Roebuck & Co., 138 N.J. 2, 17 (1994) (citing Chattin v. Cape May Greene, Inc., 124

N.J. 520, 522 (1991) (Stein, J. concurring)). Intent is not an element of proof for affirmative acts

because the law imposes strict liability for CFA violations. Bosland v. Warnock Dodge, Inc., 197

N.J. 543, 556 (2009). On the other hand, "when the alleged consumer fraud consists of an omission,

the plaintiff must show that the defendant acted with knowledge, and intent is an essential element

of the fraud." Cox, 138 N.J. at 18.


**Unlawful Conduct by the defendant**

Plaintiff's sole basis for alleging a CFA violation is a breach of contract claim. (Compl. ¶ 27.)

He claims that Defendant's conduct "constitute[s] an unconscionable commercial practice that is of

a deceptive and fraudulent nature" and in violation of the CFA. (Compl. ¶ 28.) The statute defines

an unlawful act as:

> The act, use or employment by any person of any unconscionable
> commercial practice, deception, fraud, false pretense, false promise,
> misrepresentation, or the knowing, concealment, suppression, or
> omission of any material fact with intent that others rely upon such
> concealment, suppression or omission, in connection with the sale or
> advertisement of any merchandise or real estate, or with the
> subsequent performance of such person as aforesaid, whether or not

any person has in fact been misled, deceived or damaged thereby . .
. .

N.J. Stat. Ann. § 56:8-2.  However, a breach of contract "is not per se unfair or unconscionable."

Cox, 138 N.J. at 18; see also D'Ercole Sales v. Fruehauf Corp, 206 N.J. Super. 11, 25 (App. Div.

1985).  Furthermore, such a claim alone cannot constitute an unlawful act under the CFA.  Cox, 138

N.J. at 18.  In order for a breach of contract claim to be actionable under the CFA, there must be a

showing of "substantial aggravating circumstances." Suber v. Chrysler Corp., 104 F.3d 578, 583 (3d

Cir. 1997); see also Petri Paint Co. v. Omg Ams., Inc., 595 F. Supp. 2d 416, 421 (D.N.J. 2008) ("to

succeed on a consumer fraud claim, a plaintiff must demonstrate 'substantial aggravating

circumstances'" in addition to the breach).  A substantial aggravating circumstance is "the existence

of bad faith or lack of fair dealing, sufficient to constitute an unconscionable business practice."

Petri, 595 F. Supp. 2d at 421 (quoting Cox, 138 N.J. at 18) (internal quotations omitted).  However,

here, Plaintiff's breach of contract claim fails to show that BOA acted in a manner sufficient to be

deemed an unconscionable business practice.

This Court does not make light of the present economic climate in this country and the grave

implications that may arise from a breach of Plaintiff's Modification; however, these circumstances

alone are not sufficient to establish an unconscionable business practice.  Plaintiff does not allege

or substantiate that Defendant's breach of contract was done in bad faith or lacked fair dealing.  As

such he has not alleged any adequate substantial aggravating circumstance for his breach of contract

claim to "rise to the level of an 'unconscionable commercial practice.'" See Cox, 138 N.J. at 20.

As a result, Plaintiff has not proven that BOA's alleged breach of contract was

unconscionable and thus constitutes an unlawful act under the CFA.

## CONCLUSION

For the reasons stated above, Defendant's Motion to Dismiss is GRANTED and the complaint is dismissed without prejudice.  This ruling warrants no further discussion on Plaintiff's request for attorney's fees and costs, punitive damages, and treble damages.

SO ORDERED.

s/ Susan D. Wigenton
**Susan D. Wigenton, U.S.D.J.**

cc:  Madeline Cox Arleo, U.S.M.J.